UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MISAEL ALEXANDER MARROQUIN LARIN,

Petitioner,

v.

WARDEN, *et al*.,

Respondents.

Case No. 5:26-cv-4132-CV (ASx)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS [1]**

On July 23, 2026, Misael Alexander Marroquin Larin, A-220-487-345, ("Petitioner"), then proceeding *pro se*, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") against the Warden of the Immigration and Customs Enforcement Adelanto Processing Facility; the Secretary of Homeland Security; the Acting Attorney General of the United States; the Los Angeles Field Office Director, Bureau of Immigration and Customs Enforcement; and Patrick Lechleitner, the Acting Director of USCIS; (collectively, "Respondents") challenging his detention in Immigration and Customs Enforcement ("ICE") custody. Doc. # 1 ("Pet.").

Concurrently with his Petition, Petitioner filed an Application for a Temporary Restraining Order and request for counsel. Doc. # 2. The Court denied the TRO pursuant to the Central District of California General Order No. 26-05 (the "General Order") and referred Petitioner to the Office of the Federal Public Defender ("FPD") for consideration of representation. On July 23, 2026, the matter was referred to the assigned Magistrate Judge. On August 6, 2026, the FPD filed a Notice of Appearance as counsel. Doc. # 10.

Pursuant to the General Order, Respondents were required to file an answer to the Petition by July 30, 2026. On that date, Respondents filed an Answer. Doc. # 9 ("Answer"). On August 13, 2026, Petitioner filed a reply. Doc. # 11 ("Reply"). Petitioner also filed a notice of supplemental authority on September 30, Doc. # 12, and a Status Report on November 3, Doc. # 13.

Having considered the papers filed with respect to the Petition, the Court **GRANTS** the Petition.

## I. <u>BACKGROUND</u>[1]

Petitioner, a native of El Salvador, entered the United States approximately twenty-one years ago. Pet. at 1.[2] Petitioner has no criminal history whatsoever. *Id.* Petitioner is married, has two children, cares for and has adopted his wife's niece, and is employed as a plumber for a large church. *Id.* at 4, 24. He is the sole financial provider for his household. *Id.* at 5.

On June 13, 2026, while on his way to work in Lynwood, California, Petitioner was arrested by ICE without a warrant. *Id.* Petitioner had picked up two individuals to give them a ride to work when ICE detained Petitioner and the two others whom Petitioner was driving at some point on their commute to work. *Id.* at 5.

---

[1] Respondents' Answer fails to challenge any of the factual assertions Petitioner makes in his Petition. *See generally* Answer. Accordingly, the Court considered the facts, as presented in the Petition, undisputed.

[2] All record citations reflect CM/ECF pagination.

In his Petition, Petitioner seeks the following relief from this court: (1) that the Court assume jurisdiction over this matter; (2) that the Court declare Petitioner's detention violates 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth Amendment; (3) that the Court order him immediately released, or in the alternative, order Respondents to provide Petitioner with an immediate bond hearing; and (4) enjoin Respondents from removing Petitioner from United States while his immigration proceedings remain pending. *Id.* at 13–14.

For the reasons discussed below, the Court finds Respondents violated Petitioner's due process rights under the Fifth Amendment and GRANTS the Petition.

## II. LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. *See* U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. *See, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (citation modified)); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (citation modified)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. *See, e.g.*, *Regino v. Staley*, 133 F.4th 951, 959 (9th Cir. 2025). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and

applying the *Mathews* test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under *Matthews*, the Court weighs the following three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335.

## III. <u>DISCUSSION</u>

It is undisputed that Petitioner has resided in the United States for over twenty years, is a long-term resident of California, and has a U.S. citizen daughter who is fourteen years old. Pet. at 4. It is further undisputed that Petitioner is gainfully employed as a plumber—responsible for maintaining the entire plumbing system for 58,000 square foot church campus. *Id.* at 24. Petitioner has thus lived openly in the United States for over twenty years and has no known criminal history. *Id.* at 1, 4.

As to the first *Matthews* factors, based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States and the ties he built to the community over the past 21 years. *See, e.g.*, *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245 DAD-(SCRx), 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026) ("Even assuming petitioner was not previously released at the discretion of immigration officials, he has a general liberty interest in freedom from detention."); *Tinoco v. Noem*, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); *Garcia v. Andrews*, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant

discretion retain a protected interest in their liberty.”). This “liberty is valuable and must be seen as within the protection of the [Due Process Clause].” *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

As to the second *Matthews* factors, the Petition argues that Respondents arrested him without a warrant in violation of his constitutional rights and in violation of 8 U.S.C. § 1226(a). Pet. at 5–6; Reply at 8–9. Respondents do not dispute that there is no indication that ICE sought a warrant prior to detaining Petitioner or that such ICE officers believed Petitioner was likely to escape before a warrant could be obtained. Answer at 3–5. Therefore, the Court concludes that Petitioner’s arrest on June 13, 2026, without prior notice or a pre-deprivation hearing violated Petitioner’s procedural due process rights. *See, e.g.*, *J.A.E.M. v. Wofford*, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) (“On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.” (citation modified)); *Mourey v. Bowen*, No. 5:25-cv-3262-WLH (DTBx), 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) (“Pursuant to the holding in *Mathews*, Petitioner should have been afforded a pre-detention hearing.”), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026) (granting immediate release). Accordingly, the second *Matthews* factor weighs in Petitioner’s favor.

As to the third *Matthews* factor, though the Government has an interest in the steady enforcement of its immigration laws, the Government’s interest in detaining Petitioner without any procedural protections is slight. *See Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). And custody hearings for immigration detention are routine and impose a “minimal” cost on the government. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Thus, the third *Mathews* factor counsels in favor of granting Petitioner’s release from detention.

Given the violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." *Nazarian v. Noem*, No. 25-2694-KK (ADSx), 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is the last uncontested status which preceded the pending controversy. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). The last uncontested status here is Petitioner's release from custody. *See Nazarian*, 2025 WL 3236209, at *7. "Accordingly, Petitioner's release from custody is the appropriate remedy." *Id.*; *see Esmail v. Noem*, No. 25-8325-WLH (RAOx), 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The fact that Petitioner could receive a post-deprivation bond hearing does not remedy the violation of Petitioner's procedural due process rights. Answer at 2–3; *see, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.")

Accordingly, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition for writ of habeas corpus is **GRANTED**. IT IS HEREBY ORDERED THAT:

1. Respondents must release Petitioner **(A-220-487-345)** from custody immediately and must file a notice of compliance with this order, notifying the Court that Petitioner has been released, **within two days**;

2. While Petitioner is in Respondents' custody, Respondents are **ENJOINED** from relocating Petitioner outside of the Central District of California;

3. When releasing Petitioner, Respondents must return any property seized from him in the course of his arrest and detention; and

4. Respondents are **ENJOINED** from re-detaining Petitioner unless a custody hearing is held before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that materially changed circumstances have established that Petitioner is a danger to the community or a flight risk.

**IT IS SO ORDERED**.

Dated: November 4, 2026

Cynthia Valenzuela

HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE